## Gallagher's Appeal.

*A partner may not pay his personal debts out of the assets of his firm, for that would be a fraud upon his partners; but he may pay the debts of his firm out of his individual assets, even though his private debtors remain unpaid, and he thereby becomes unable to pay them.*

October 8th, 1886.   Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., absent.

APPEAL from the Court of Common Pleas of *Westmoreland county:* Of October Term 1886, No. 220.

This was an appeal of Elizabeth K. Gallagher, Maggie M. Gallagher, Bella C. Gallagher, and James H. Gallagher, (by his guardian, Maggie M. Gallagher), widow and heirs of Thomas F. Gallagher deceased, from the decree of the Court of Common Pleas, of Westmoreland county, confirming the report of the Auditor in the distribution of the fund in the hands of the assignee of Geo. Gallagher.

In the spring of 1847, Thomas F. Gallagher and George Gallagher formed a co-partnership for carrying on a general merchandising business, in the borough of New Alexandria. This partnership continued until it was terminated by the death of T. F. Gallagher, on the 4th day of November, 1883. At this time the firm was largely indebted to firm creditors, and was also possessed of firm assets, and each of the partners had individual debts, and also individual assets, real and personal. George Gallagher, as surviving partner, took charge of the business after the death of his partner, and collected claims due to the firm, and paid some of the debts owing by the firm. No general settlement of the partnership accounts has ever been had.

George Gallagher, in December, 1883 entered, into partnership with his son, James E. Gallagher, under the firm name of George Gallagher & Son, and continued in business till 10th March, 1885, when James E. Gallagher retired from the firm. While George Gallagher & Son were in business they contracted certain debts, some of which are still outstanding.

On the morning of the 17th March, 1885, George Gallagher, being insolvent, made an assignment for the benefit of his creditors. On the 16th March, 1885, in anticipation of making the assignment, he confessed twenty-one judgments against himself, aggregating about $48,556.57. These judgments were entered of record in the Prothonotary's office on the evening of the 16th March, after the regular office hours. The evidence discloses that the judgments confessed included $34,407 of the debts of the firm of T. & G. Gallagher, and $2,366.57 of

the debts of the firm of George Gallagher & Son. Of the seventeen judgments which represented firm debts, fifteen were by the assignor delivered to the attorneys of the assignee, and by them entered of record. George Gallagher testifies that the object of giving the judgments to the appellees was to give them a preference in distribution. T. & G. Gallagher had no partnership real estate. Of the fund for distribution $24,564.43 came from the proceeds of George Gallagher's individual real estate.

No assignment was ever made by the firm of T. & G. Gallagher, or by the firm of George Gallagher & Son. The assignee of Geo. Gallagher charges himself with $443.65, which it is alleged was produced from the assets of the firm of T. & G. Gallagher. The account of the assignee of George Gallagher having been confirmed, the court appointed L. W. Doty, Esq. an Auditor to distribute the fund in the hands of the accountant to and among those legally entitled to the same. Before the Auditor objection was made by counsel for the individual creditors of George Gallagher to the judgments which George Gallagher had confessed against himself individually for firm debts, and a postponement of a lien of them in favor of *bona fide* individual creditors was asked. The Auditor, however, believing that he had no power to postpone the judgments of the appellees, allotted the proceeds of George Gallagher's real estate to them. He also treated $443.65 in the hands of the assignee of George Gallagher as the assets of the firm of T. & G. Gallagher, and allotted it to their creditors. To the report of the Auditor exceptions were filed in behalf of the individual creditors of George Gallagher. Among these exceptants are the appellants herein, to whom, jointly, there was owing by George Gallagher individually a claim of about $1,900. The court, HUNTER, P. J., after argument, overruled these exceptions, and confirmed the report, whereupon this appeal was taken, and the decree of the court confirming the Auditor's report, was assigned for error.

*Jeff W. Taylor* and *A. D. McConnell* for appellants.—Where there are separate and partnership creditors, and separate and partnership property, each estate shall be applied exclusively in the first instance to the payment of its own creditors; the joint estate to the joint creditors, and the separate estate to the separate creditors: Walker *v.* Eyth, 1 Casey, 216; Black's Appeal, 8 Wright, 503; Leonard's Exr's *v.* Winslow, 2 Grant, 139; McKinney & Heller *v.* Brights, 4 Harris, 399; Livingstone *v.* Roosevelt, 4 Johns, 272.

A partner cannot pay the firm debts out of his own assets

to the exclusion of his individual creditors: Jackson v. Cornell, 1 Sand., Ch. 348.

*Peoples* (*McAfee & Atkinson* with him), for appellees.—It is only when a man loses dominion over his property and transfers that dominion to another that the right of the creditors to a *pro rata* dividend attaches. Whilst a man retains dominion of his property he may encumber and convey it as he pleases and prefer such creditors by payment and transfer as he chooses. Such preference is not fraudulent either in law or in fact. This principle is established by abundant authority: See Blakey's Appeal, 7 Barr, 451; Worman v. Wolfersberger, 7 Harris, 59; Uhler v. Maulfair, 11 Harris, 481; York County Bank v. Carter, 2 Wright, 446; Wilson v. Berg, 7 Norris, 167; Siegel v. Chidsey, 4 Casey, 279; Walker v. Marine Bank, 2 Out., 574; Hutchinson v. McClure, 8 Harris, 63.

The equity of partnership and individual partners, can only be worked out through the equity of the partners, and where a partner chooses to waive his equity, the creditor has no equity redress: Le Fevre's Appeal, 19 P. F. S., 122.

The equitable principle invoked by the appellants to sustain their theory in this case does not have the rigid and unyielding application which is contended for by them. And we are not compelled to rely upon the chancery practice of a sister state to establish this proposition. In the case of Cumming's Appeal, 1 Casey, 268, it was held: "A judgment against a firm is a lien on the separate real estate of the partners and is entitled to priority in the distribution of the proceeds of sale of such separate real estate over a subsequent judgment of a separate creditor of the partner whose real estate was sold.

Mr. Justice PAXSON delivered the opinion of the court, November 15th, 1886.

This was an appeal from the decree of the court below distributing the assigned estate of George Gallagher. The deed of assignment appears to have conveyed not only the individual estate of George Gallagher but also "all the goods, chattels, effects, book accounts, notes and property of every kind, real, personal and mixed, of the partnership heretofore existing between the said George Gallagher and Thomas F. Gallagher, deceased, of which said partnership the said George Gallagher is the surviving partner."

The assignor had a valuable real estate which it was conceded was his individual property, and the title to which was in his own name. The assignment was executed on the morning of March 17th, 1885. On the 16th of March, the day prior to the assignment, and probably in anticipation thereof,

the assignor confessed judgment to various firms and individuals, aggregating about $48,000; about three fourths in amount of said judgments were for the debts of the firms of T. & G. Gallagher, and George Gallagher & Son, of each of which he had been a member shortly before the assignment. The *bona fides* of these judgments was not disputed. It was conceded that he owed the different firms in whose favor the judgments were confessed; the contention was that he had no right to pay the debts of his firm out of his individual estate in preference to his individual creditors.

Since Blakey's Appeal, 7 Penn. St., 449, it has been the settled law of this state that a debtor may prefer a creditor provided he does not do so in a deed of assignment. The Act of 1843 strikes down such preferences in assignments. But whilst a man retains dominion of his property he may pay whom he pleases or secure whom he pleases; he may encumber or convey his property; he may prefer creditors as he chooses by payment or transfer. So long as he violates no law and commits no fraud the law will not interfere with him. It is only when a man loses dominion over his property, and transfers that dominion to another, that the right of a creditor to a *pro rata* dividend attaches. When it is in *gremio legis* his control over it ceases.

It is conceded law that one partner may not pay his private debt out of the assets of his firm, and it was contended by the appellants that the converse of this proposition is true, that is to say, that one member of a firm may not pay the debt of his firm out of his individual assets until his private debts are first paid. If the appellants' contention amounts to anything it amounts to just this. This position is so palpably unsound that it does not require extended discussion. The difference between the two propositions is obvious to the dullest understanding. To pay a private debt out of firm assets is a fraud —an actual fraud. It is taking the money of one person to pay the debt of another, and being an unlawful act may be restrained by an injunction. But who ever heard of restraining by injunction a man from paying his own debts with his own money? which is precisely what a man does when he pays a debt of his firm out of his private means. Not only will the law not interfere in such case, but it will lend its aid to compel him to do this very thing. For a debt of the firm the creditor may levy upon and sell the private property of one partner.

It is true the rule in equity is settled in this state that when there are partnership and separate creditors, and partnership and separate property, and the firm is insolvent, each class has priority upon its respective estate, and must first resort to it for payment. After satisfaction of the claim of either

class, the other may come upon the residue, according to its several legal and equitable rights: Black's Appeal, 44 Penn. St., 503. But it is equally well settled that this is the equity of the partners, not of the creditors, and if the latter cannot work it out through the partners they cannot do so at all. It is a rule also that can only be invoked when the law steps in to distribute the estate of the insolvent firm. It has no application to an act done by a partner whilst in the full control of his property.

The appellees claim by virtue of a lien lawfully acquired upon the real estate of the assignor. It is now proposed to postpone those judgments by an equitable mode of marshaling assets. This cannot be done in this state: Cumming's Appeal, 25 Penn. St., 268. It was held in that case that a judgment against a firm is a lien on the separate real estate of the partners, and is entitled to priority in the distribution of the proceeds of sale of such separate real estate, over a subsequent judgment of a separate creditor of the partner whose real estate was sold.

Jackson v. Cornell, Sandford's 1st Chan. Rep., 348, was cited by appellants as sustaining the position that the assignor could not, by confession of judgment, prefer partnership creditors as against his individual estate. We do not regard it as authority upon the point referred to. The question there arose upon the validity of such a preference in the deed of assignment itself, a thing which would be wholly invalid by our law. And that case recognized the principle contended for by the appellees here, for the court said: "Let the partner actually apply his own property as he thinks proper while he administers it himself." That is precisely what the assignor did in the case at bar. Whilst having full dominion over his property he confessed these judgments. To the extent of giving liens on his real estate he applied it to the payment of certain debts. The assignee took the real estate bound by the judgments and subject to their lien. It is too plain for argument that the proceeds must be applied to their payment. This disposes of the only point in the case.

The decree is affirmed and the appeal dismissed at the costs of the appellants.